## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TYRONE BRADLEY,

           Plaintiff,

    v.

SCOTT PRINCE, *et al.*,

           Defendants.

No. 4:24-CV-01652

(Chief Judge Brann)

## MEMORANDUM OPINION

### JANUARY 30, 2025

Plaintiff Tyrone Bradley filed the instant *pro se* civil rights lawsuit alleging constitutional violations by medical providers at the State Correctional Institution in Dallas, Pennsylvania (SCI Dallas). His Section 1983[1] claims sound in deliberate indifference to serious medical needs. Because Bradley fails to state a claim upon which relief may be granted, the Court will dismiss his complaint pursuant to 28 U.S.C. § 1915A(b)(1) but will grant him leave to amend.

## I.    BACKGROUND

Bradley initially recounts that, in August 2022, he underwent left knee surgery for his "ACL and meniscus."[2] He was discharged with a "full leg brace"

---

[1]  42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]  Doc. 1 ¶ 8.

and began receiving physical therapy sessions in Pittstown, Pennsylvania.[3]  During this time, Bradley was being held in pretrial detention.[4]

In November 2022, Bradley was sentenced to three to six years' imprisonment for controlled substance offenses, to be served in a state correctional institution.[5]  During the following months, he was transferred between three different facilities (Luzerne County Prison, SCI Smithfield, and SCI Camp Hill).[6] On February 8, 2023, Bradley was moved to SCI Dallas, his current facility of incarceration.[7]

The gravamen of Bradley's complaint involves the medical care he received while at SCI Dallas.  He first alleges that, immediately upon his arrival, he informed unspecified "medical staff" about his prior knee surgery and the resulting swelling, stiffness, and pain he was experiencing.[8]  According to Bradley, he did not receive a knee brace until May 7, 2023.[9]  He also recounts that, despite his knee problems, he was assigned to the "top tier" of the housing unit (requiring him to walk up and down stairs every day) and to the top bunk in his cell.[10]  He does not allege who was responsible for his cell assignment.

---

[3]   *Id.*
[4]   *Id.* ¶¶ 8-9.
[5]   *Id.* ¶ 10.
[6]   *Id.* ¶¶ 11-15.
[7]   *Id.* ¶ 18.
[8]   *Id.*
[9]   *Id.* ¶ 19.
[10]  *Id.*

Bradley next avers that on August 26, 2023, he submitted a sick-call form, and three days later—while the prison was on lockdown—he was visited at his cell by defendant Physician Assistant Mark Able.[11]  PA Able witnessed Bradley's difficulty in climbing down from the top bunk and also examined Bradley's knee, which was "swollen and stiff."[12]  PA Able prescribed "Naproxen 375 mg" to treat Bradley's knee issues.[13]

Later that day, when Bradley went to pick up the prescribed medication, he avers that he informed "medical staff" that he was still assigned to the top tier and top bunk, and that this assignment was causing him knee pain.[14]  On September 5, 2023, Bradley was moved to the bottom bunk but remained housed on the top tier of the unit.[15]

On September 15, 2023, Bradley filed a formal grievance (# 1052987) regarding the medical care he was receiving at SCI Dallas.[16]  In his grievance, he explained that since late August 2023, he had spoken to "medical staff" on several occasions concerning his knee pain and swelling.[17]  He recounted that he "had been given bottom bunk status, a knee brace, and pain medication," as well as daily

---

[11]  *Id.* ¶ 20.
[12]  *Id.*
[13]  *Id.*
[14]  *Id.* ¶ 21.
[15]  *Id.* ¶ 22.
[16]  *Id.* ¶ 23; Doc. 1-1 at 1.
[17]  Doc. 1-1 at 1.

monitoring of his knee brace by the medical department.[18]  He asserted, however, that "the pain meds [he had] received do not work" and that he needed "to have an MRI and/or X-ray for [his] serious medical need."[19]

In the October 10, 2023 initial review response to Bradley's grievance, the prison's Corrections Health Care Administrator thoroughly reviewed Bradley's medical history and the treatment provided, found his extensive medical treatment to be appropriate, and denied his grievance.[20]  Bradley appealed to the Facility Manager, who upheld the grievance denial on November 9, 2023.[21]

On November 26, 2023, Bradley attempted to appeal the Facility Manager's decision to final review.  However, he "mistakenly" filed the appeal with the Facility Manager due to his misunderstanding of the grievance process, which he acknowledges was "an error on [his] behalf."[22]  On December 18, 2023, the Superintendent of SCI Dallas (who is also the Facility Manager)[23] responded to Bradley and informed him that an appeal to final review must be mailed to the Secretary's Office of Inmate Grievances and Appeals (SOIGA), provided him with the SOIGA's mailing address, and noted that his appeal would "not be processed" as currently filed.[24]  It does not appear, and Bradley does not allege, that he ever

---

[18]  *Id.*
[19]  *Id.*
[20]  Doc. 1 ¶ 24; Doc. 1-1 at 2-3.
[21]  Doc. 1 ¶¶ 25-26; Doc. 1-1 at 5.
[22]  *See* Doc. 1 ¶ 27; Doc. 1-1 at 6-7.
[23]  *See* Doc. 1-1 at 5, 7.
[24]  *Id.* at 7.

properly filed an appeal to final review with the SOIGA or received a decision by the SOIGA on such an appeal.

Bradley lodged the instant Section 1983 complaint in this Court on September 27, 2024.[25]  He sues three defendants: Doctor Scott Prince, CRNP Loretta DeBoer, and Physician Assistant Mark Able.[26]  He initially moved for leave to proceed *in forma pauperis*,[27] but then submitted the full filing fee on or about November 20, 2024.[28]  Bradley's complaint is now ripe for screening under 28 U.S.C. § 1915A.

## II.    STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[29]  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[30]  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[31]

---

[25] *See generally* Doc. 1.

[26] *Id.* ¶¶ 4-6.

[27] Doc. 3.

[28] *See* Doc. 8.

[29] *See* 28 U.S.C. § 1915A(a).

[30] *Id.* § 1915A(b)(1).

[31] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[32]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[33]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[34]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[35]  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[36]  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[37]  Finally, the court must review the presumed-truthful allegations

---

[32] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[33] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[34] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[35] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[36] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[37] *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"and then determine whether they plausibly give rise to an entitlement to relief."[38]

Deciding plausibility is a "context-specific task that requires the reviewing court to

draw on its judicial experience and common sense."[39]

Because Bradley proceeds *pro se*, his pleadings are to be liberally construed

and his complaint, "however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers[.]"[40]  This is particularly true

when the *pro se* litigant, like Bradley, is incarcerated.[41]

## III.    DISCUSSION

Upon review of Bradley's Section 1983 complaint and its attachments, it is

clear that he fails to state a claim upon which relief may be granted.  The Court

will address his pleading deficiencies in turn.

### A.    Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be

"predicated solely on the operation of *respondeat superior*."[42]  Rather, a Section

1983 plaintiff must aver facts that demonstrate "the defendants' personal

involvement in the alleged misconduct."[43]  Personal involvement can include direct

wrongful conduct by a defendant, but it can also be demonstrated through

---

[38]  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[39]  *Iqbal*, 556 U.S. at 681.

[40]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).

[41]  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

[42]  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

[43]  *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[44]  Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[45]

Bradley's initial pleading deficiency is his failure to allege personal involvement.  Although he identifies three individual Defendants, Bradley never delineates how two of them were involved in the alleged constitutional misconduct.

First, with respect to CRNP DeBoer, this Defendant is identified only in the caption and "Defendant" identification section of Bradley's complaint.  There are no allegations of how CRNP DeBoer was involved in Bradley's treatment at SCI Dallas or how her actions violated the Eighth Amendment.

Second, although Bradley names Dr. Prince as a Defendant, he does not provide any relevant allegations as to Dr. Prince's purportedly deficient medical care.  Dr. Prince is mentioned only once near the end of Bradley's complaint.  In that paragraph, Bradley alleges that he was seen by Dr. Prince on July 26, 2024,

---

[44] *Id.* (quoting *Rode*, 845 F.2d at 1207).

[45] *See id.* at 374 (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

regarding the results of an X-ray, and that Dr. Prince informed Bradley that his "restrictions have been updated."[46]  This single sentence does not indicate how Dr. Prince was involved in constitutionally violative medical care at SCI Dallas.

To plausibly plead a Section 1983 claim, Bradley must specify each Defendant's personal involvement in the alleged constitutional misconduct in order to state a claim against them.  Accordingly, the Court must dismiss the Section 1983 claims against defendants CRNP DeBoer and Dr. Prince pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

## B.    Eighth Amendment Medical Indifference

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[47]  To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."[48]  A serious medical need is "one that has been diagnosed by a physician as requiring treatment

---

[46]  Doc. 1 ¶ 30.

[47]  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[48]  *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[49]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[50]  Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[51]  Claims sounding in mere medical negligence will not suffice.[52]

Assuming that Bradley has stated a serious medical need with respect to his knee issues, his medical indifference claims fail at the second element.  That is, he has not plausibly alleged facts that would show that any particular Defendant acted with deliberate indifference toward his serious medical needs.

As noted above, Bradley fails to allege any relevant involvement by Dr. Prince or CRNP DeBoer in his medical care, and thus logically fails to allege that these Defendants were aware of and deliberately indifferent to his knee problems. As to PA Able, Bradley's only allegation is that on a single occasion, PA Able

---

[49]  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

[50]  *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).

[51]  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

[52]  *Rouse*, 182 F.3d at 197.

visited Bradley's cell, examined his knee, and prescribed pain medication as treatment. This single allegation does not implicate negligence, let alone deliberate indifference. And even if this allegation could be construed as Bradley asserting that PA Able failed to provide appropriate care, it is well settled that mere disagreement as to a medical provider's professional judgment or treatment plan generally does not rise to the level of a constitutional violation.[53]

Additionally, Bradley's complaint fails to adequately plead causation, the third element of a medical indifference claim. It is impossible to determine from his allegations whether any particular Defendant's conduct caused his harm. Bradley appears to maintain that "his knee has not healed correctly" due to the absence of appropriate medical devices and treatment.[54] However, his complaint does not plausibly allege that any named Defendant's actions proximately caused this alleged injury.[55] Accordingly, Bradley's Eighth Amendment claims must be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

---

[53] *See Lanzaro*, 834 F.2d at 346 (explaining that "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation"); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) ("Because 'mere disagreement as to the proper medical treatment' does not 'support a claim of an eighth amendment violation,' when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." (internal citation omitted)); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

[54] Doc. 1 ¶ 31.

[55] It appears that Bradley may be assigning blame to other medical providers at previous jails or correctional institutions. Such claims, however, are not part of the instant lawsuit and do not appear to have been raised in the administrative remedy process.

### C.    Official Capacity Claims

Bradley sues all Defendants in their individual and official capacities.[56]

However, any official capacity claim seeking monetary damages from state

officials is barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment to the United States Constitution prevents federal

courts from entertaining lawsuits—by United States citizens or citizens of foreign

states—brought against a state.[57]  This immunity from private suit extends to state

agencies as well as state officials acting in their official capacity, because such

lawsuits are essentially civil actions "against the State itself."[58]  States may waive

this immunity if they choose, but Pennsylvania has explicitly not waived its

immunity with respect to claims brought under Section 1983.[59]  There are two

exceptions to the Eleventh Amendment's bar to private suits against nonconsenting

states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue

state officers for *prospective* injunctive and declaratory relief."[60]

---

[56]  *See* Doc. 1 ¶ 7.

[57]  U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

[58]  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

[59]  *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

[60]  *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

Bradley seeks compensatory and punitive damages, as well as legal costs.[61] To the extent those damages are sought against Defendants in their official capacities, such claims are barred by Eleventh Amendment sovereign immunity. Moreover, Bradley's request for a declaration that his constitutional rights were violated[62] is retrospective, rather than prospective, in nature. Thus, Bradley's official capacity claims must be dismissed as well.

### D.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 (PLRA)[63] requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.[64] Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.[65] The exhaustion process a prisoner must follow is governed by the contours of the prison grievance system in effect where the inmate is incarcerated.[66]

Pennsylvania's Department of Corrections employs a three-step grievance process that must be completed to properly exhaust administrative remedies in

---

[61]  *See* Doc. 1 ¶¶ 44, 45, 47.

[62]  *See id.* ¶ 43.

[63]  42 U.S.C. § 1997e *et seq.*

[64]  *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).

[65]  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

[66]  *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.

most cases.[67]  If informal resolution attempts do not solve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based."[68]  An adverse decision by the grievance coordinator must be appealed to the Facility Manager within 15 working days of the initial-review response or rejection.[69]  Finally, an adverse decision by the Facility Manager must be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals (SOIGA), and again must be submitted within 15 working days of the date of the Facility Manager's decision.[70]

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other conditions, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court."[71]

---

[67]  *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").
[68]  DC-ADM 804 § 1(A)(3)-(5), (8).
[69]  *Id.* § 2(A)(1).
[70]  *Id.* § 2(B)(1).
[71]  *Id.* § 1(A)(11).

Generally, failure to exhaust administrative remedies is an affirmative defense, not a pleading requirement.[72]  Nevertheless, when it is apparent from the face of the complaint that a plaintiff has failed to administratively exhaust a claim, dismissal may be appropriate based on "failure to state a claim."[73]  This includes *sua sponte* dismissal for failure to state a claim.[74]

Bradley has included his grievance filings, denials, and appeals as part of his complaint.[75]  Those documents, as well as Bradley's own allegations,[76] reflect several significant administrative exhaustion deficiencies.

First, and most importantly, Bradley concedes that he filed his appeal to final review with the wrong entity.  Although this appeal was procedurally rejected by the Facility Manager and Bradley was explicitly informed that he must file his final appeal with the SOIGA, it does not appear that Bradley took this critical step. Proper administrative exhaustion, however, requires an inmate to complete each step of their facility's grievance process and to do so correctly so that the agency

---

[72]  *See Jones*, 549 U.S. at 216.

[73]  *See Ball v. Famiglio*, 726 F.3d 448, 460 (3d Cir. 2013*), abrogated in part on other grounds by Coleman v. Tollefson*, 575 U.S. 532 (2015).

[74]  *See Ray v. Kertes*, 285 F.3d 287, 293 n.5 (3d Cir. 2002) (citations omitted); *Booth v. Churner*, 206 F.3d 289, 290-91, 300 (3d Cir. 2000) (affirming district court's *sua sponte* dismissal where prisoner-plaintiff conceded in his complaint that he did not exhaust administrative remedies); *Pena-Ruiz v. Solorzano*, 281 F. App'x 110, 112 n.3 (3d Cir. 2008) (nonprecedential) ("Although failure to exhaust administrative remedies is generally an affirmative defense to be pleaded by the defendant, we have recognized that a district court has the inherent power to dismiss *sua sponte* a complaint . . . which facially violates a bar to suit.").

[75]  Doc. 1-1.

[76]  *See* Doc. 1 ¶¶ 23-27.

decides the issue on the merits.[77]  It therefore appears that Bradley failed to complete the administrative exhaustion process and procedurally defaulted his Eighth Amendment claims.

Another potential deficiency that presents itself from the face of Bradley's grievance is that he did not identify any individual "directly involved in the event(s)," as required by DC-ADM 804.  Bradley's grievance and appeals are devoid of names or any other potentially identifying information (like a medical position or job description) that would indicate *who* Bradley believed was responsible for the purportedly unconstitutional medical treatment at SCI Dallas. Indeed, his grievance states only that he spoke to unspecified "medical staff" about his knee problems.  Yet it does not even allege that the unspecified "medical staff" failed to act, because the grievance proceeds to recount that—in response to his complaints—he was assigned to the bottom bunk, given a knee brace, and prescribed pain medication.  Thus, it appears that Bradley failed to properly exhaust his claims against the instant Defendants because he never identified them during the grievance process as being responsible for the alleged Eighth Amendment violations.[78]

---

[77] *See Woodford*, 548 U.S. at 90 (explaining that proper administrative exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (citation omitted)).

[78] The Court does not rely on this identification issue as a basis for finding administrative remedies unexhausted.  Rather, it is Bradley's failure to seek final review with the SOIGA that renders his Eighth Amendment claims unexhausted.

###### E.      Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[79]  Bradley will be granted leave to amend in the event that he can plead facts that would plausibly state a Section 1983 claim for deliberate indifference to serious medical needs.

If Bradley chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings.  The amended complaint should set forth his claims in short, concise, and plain statements, and in sequentially numbered paragraphs.  Bradley must leave one-inch margins on all four sides of his pleading.[80]  Any exhibits or documents he wishes to present should be attached to his amended complaint.  He must also name proper defendants and *specify* the offending actions taken by a particular defendant.  This step is particularly critical for Bradley, as his initial complaint is largely devoid of allegations that demonstrate Defendants' personal involvement in the purportedly deficient medical care.  He must also sign the amended complaint and indicate the nature of the relief sought.

---

[79]  *Grayson*, 293 F.3d at 114.
[80]  *See* LOCAL RULE OF COURT 5.1.

If Bradley does not timely file an amended complaint, dismissal of his Section 1983 claims without prejudice will automatically convert to dismissal with prejudice and the Court will close this case.

## IV.   CONCLUSION

Based on the foregoing, the Court will dismiss Bradley's complaint pursuant to 28 U.S.C. § 1915A(b)(1) because he fails to state a claim upon which relief may be granted.  Bradley may file an amended complaint in accordance with this Memorandum.  If no amended complaint is timely filed, dismissal without prejudice will automatically convert to dismissal with prejudice and the Court will close this case.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge